## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | |
|---|---|
| **GARY GREEN**            ) | |
| 11394 Bantry Terrace      ) | |
| Fairfax, VA 22030-5411    ) | |
|                     ) | |
|           Plaintiff,      ) | |
|                     ) | |
|       v.                 ) | **Civil Action No.:** |

Plaintiff, GARY GREEN,
11394 Bantry Terrace
Fairfax, VA 22030-5411

         Plaintiff,

     v.

**AETNA LIFE INSURANCE COMPANY,**
151 Farmington Avenue
Hartford, CT 06156

SERVE:     Aetna Life Insurance Company
              c/o C T Corporation
              4701 Cox Rd Ste 285,
              Glen Allen, VA, 23060 – 6808

**EXXONMOBIL RETIREE MEDICAL PLAN**
P.O. Box 64111
Spring, TX 77387-4111

SERVE:     Corporation Service Co.
              211 East 7th Street, Suite 620
              Austin, Texas 78701-3218

          Defendants.

## COMPLAINT

Plaintiff, GARY GREEN, submits this Complaint against Defendants AETNA LIFE INSURANCE COMPANY and the EXXONMOBIL RETIREE MEDICAL PLAN and respectfully states as follows:

## The Parties

1.      Plaintiff Gary Green is and was at all relevant times a resident of the Commonwealth of Virginia.

2.      Plaintiff has resided at all relevant times in Fairfax County, Virginia.

3.      The claims at issue were specifically administered in this judicial district by Defendant Aetna Life Insurance Company (hereafter "Aetna").

4.      Aetna is a corporation with its principal place of business in the State of Connecticut.

5.      Aetna is authorized to transact, and is transacting business, in this judicial district of the Eastern District of Virginia and can be found in the Eastern District of Virginia.

6.      Plaintiff was entitled to health care benefits under a self-funded group employee welfare benefit plan regulated by ERISA as a result of his employment.

7.      The name of the self-funded group employee welfare benefit plan was ExxonMobil Retiree Medical Plan (Member ID#: W069467600) (hereafter referred to as "the Plan").

8.      The Plan funds the payment of benefits under this Plan.

9.      Attached as Exhibit A is a true and correct copy of Plaintiff's Summary Plan Description for the Plan.

10.      Defendant ExxonMobil Retiree Medical Plan (hereafter "ExxonMobil") is the sponsor and administrator of the Plan.

11.     ExxonMobil is a corporation with its principal place of business in the state of Texas.

12.     Payment for the medical benefits under the Plan and decisions made regarding what medical benefits will be provided are determined by the "Administrator-Benefits" which is identified as the "ExxonMobil Retiree Medical Plan."

13.      The medical claims at issue here were specifically administered in this judicial district, such that venue is expressly proper in this judicial district pursuant to 29 U.S.C. § 1132(e)(2) (special venue rules applicable to ERISA actions).

## Jurisdiction

14.     This action is brought under 29 U.S.C. §§ 1132(a), (e), (f) and (g) of the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA") as it involves a claim by Plaintiff for retiree employee benefits under a retiree employee benefit plan regulated and governed by ERISA.

15.     Jurisdiction is predicated under these code sections as well as 28 U.S.C. § 1331, as this action involves a federal question.

16.     This action is brought for the purpose of obtaining benefits under the terms of a retiree employee benefit plan, enforcing Plaintiff's rights under the terms of a retiree employee benefit plan, and to clarify Plaintiff's rights to future benefits under the retiree employee benefit plan.

17.     Plaintiff seeks relief, including but not limited to payment of benefits, prejudgment and post-judgment interest, and attorneys' fees and costs.

**Introduction and Background of Proton Beam Radiation Therapy**

18.     Proton beam radiation therapy (hereafter "PBRT" or "proton therapy") has been recognized for decades by the medical community as an established, medically appropriate treatment for cancer, including adenoid cystic carcinoma of the L sublingual gland ("adenoid cystic carcinoma").

19.     The first hospital-based proton-beam center in the United States was at the Loma Linda University Medical Center, which began operation in 1990.

20.     Through local coverage determinations or the guidelines adopted by various Medicare Advantage organizations (MAOs), Medicare generally covers PBRT for adenoid cystic carcinoma.

21.     PBRT is the most effective form of radiation therapy for many types of cancer.

22.     PBRT destroys cancer cells by preventing them from dividing and growing, like conventional X-ray radiation.

23.     The difference between PBRT and conventional X-ray radiation is that protons deposit much of their radiation directly in the tumor and then stop.

24.     That allows patients to receive higher doses, which can be more effective, while reducing damage to healthy tissues that surround the tumor.

25.     The physical properties of protons are different from the physical properties of X-rays.

26.     Protons are large, positively charged sub-atomic particles that penetrate matter to a finite depth.

27.     X-rays are electromagnetic radiation that penetrate completely through tissue.

28.     Protons can be conformed to release much of their energy at precise depths so they can target tumors inside the body, depositing much of their radiation exactly at the tumor site.

29.     X-rays release their maximum dose of radiation quickly after penetrating the skin, damaging healthy tissue and organs on their way to the tumor and again as they pass through the body beyond the tumor.

30.     The goal of treatment is to deliver the proper dose of radiation to the tumor while limiting the dose received by the surrounding healthy tissue.

31.     To deposit the proper amount of energy into the tumor, X-rays must irradiate much of the healthy tissue in front of it, known as an "entrance dose," and then continue to penetrate through the tumor and irradiate much of the healthy tissue behind it, known as an "exit dose."

32.     To deliver the proper dose to a tumor, a radiation oncologist must "work around" the tumor by using multiple X-ray beams, delivering the highest dose where the beams intersect, but delivering low to medium "entrance" and "exit" doses to surrounding healthy tissue.

33.     In contrast, protons enter the patient at a low dose, then, at a precise depth, they deliver a large burst of energy.

34.     Immediately after this burst, the protons stop completely.

35.     To treat the entire tumor, additional protons are sent in at lower doses.

36.     In this way, protons completely irradiate the tumor while limiting the dose to the nearby healthy tissue.

37.     Proton treatment delivers a dose in a more accurate way, a more efficient way, and spares more of the surrounding healthy tissue.

38.     Since protons have a low "entrance dose" and essentially no "exit dose," the volume of normal tissue receiving radiation with PBRT is typically reduced by a factor of 2-3 when compared to even the most modern X-ray treatment plan.

39.     Proton radiation therapy offers reduced toxicity over intensity-modulated therapy (IMRT) in patients with adenoid cystic carcinoma.

40.     Proton therapy is the most effective form of treatment for adenoid cystic carcinoma cancer because it minimizes the radiation dose to vital bodily organs (e.g., head, neck, eyes, mouth, and brain) and functions.

41.     Many respected institution or academic-based hospitals or other cancer facilities and providers recommend and use PBRT on a regular basis.

42.     Examples include but are not limited to Medstar Georgetown University Hospital, MD Anderson at the University of Texas, Harvard Medical School/Massachusetts General Hospital, Northwestern University, Baptist Hospital's Miami Cancer Institute, Loma Linda University, University of Florida, University of Maryland, Mayo Clinic, Emory University, Case Western Reserve University, Washington University in St. Louis, University of Washington, New York Proton Center, and the Texas Center for Proton Therapy.

43.     The medical community has found proton beam therapy radiation treatment to be a generally accepted standard of medical practice for the treatment of adenoid cystic carcinoma.

44.     Other insurers, including Medicare, cover PBRT as a safe and effective treatment for adenoid cystic carcinoma that is not deemed "investigational."

45.     There is overwhelming evidence that PBRT is safe and effective.

46.     PBRT is a generally accepted standard of medical practice for the treatment of cancer, including breast cancer, within the medical community.

47.     PBRT has been around and well-accepted for over 30 years.

48.     The Food and Drug Administration ("FDA") approved PBRT in 1988 with the following specific statement of indications for intended use: "The [Proton Therapy System] is a medical device designed to produce and deliver proton beam for the treatment of patients with localized tumors and other conditions susceptible to treatment by radiation."

49.     The American Society for Radiation Oncology (ASTRO), the National Comprehensive Cancer Network (NCCN), and other nationally recognized medical organizations have validated the safety and effectiveness of PBRT.

50.     Numerous peer-reviewed studies have validated the safety and effectiveness of PBRT.

51.     This also sets proton therapy apart from conventional X-ray radiation, as historically the radiation oncology field has not performed many randomized trials testing whether or not one technology is better than another.

52. Because radiation therapy is based on well understood principles of physics, a randomized trial is not necessary to know whether or not more energy will be deposited into healthy tissue with X-rays than with proton therapy.

53. That X-rays will irradiate more surrounding healthy tissue than proton therapy is a long-established scientific fact.

54. Instead, the field is interested in whether or not more energy can be delivered to the tumor and less to healthy tissue.

55. In contrast, there is no randomized data or prospective data to support the use of X-ray radiation to treat adenoid cystic carcinoma of the L sublingual gland.

56. X-ray radiation to treat adenoid cystic carcinoma of the L sublingual gland has been the default fallback to which Aetna has forced its subscribers to resort by virtue of its systematic denial of PBRT for the treatment of adenoid cystic carcinoma of the L sublingual gland.

57. The medical community has found PBRT treatment to be both medically necessary and a superior form of treatment than established alternative treatments for the treatment of adenoid cystic carcinoma.

## Plaintiff Specific Facts

58. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

59. Plaintiff's treating provider, Dr. Peter H. Ahn of Medstar Georgetown University Hospital ("Georgetown"), found PBRT to be the best form of treatment for Plaintiff.

60.     Plaintiff is a 65-year-old man who in 2015 began experiencing episodic trouble with articulation, tongue extrusion, numbness and tingling sensations on the left side of his tongue.

61.     By 2019, these symptoms worsened leading to decreasing tongue mobility only on the left side of the tongue.

62.     Plaintiff sought care and treatment at Georgetown.

63.     Plaintiff's doctors concluded that PBRT was medically necessary for Plaintiff, as opposed to Intensity-Modulated radiation therapy (IMRT).

64.     Plaintiff's treating providers at Georgetown that Plaintiff's also determined that his best course of treatment was a resection followed by adjuvant radiotherapy.

65.      Delayed by COVID-19, Plaintiff's surgery occurred on May 11, 2020.

66.     Following Plaintiff's surgery, it was further determined that he was unable to undergo further resection and must move forward with radiotherapy.

67.     On March 12, 2020, Plaintiff's prior authorization request for PBRT was denied by Aetna on the following grounds:

> **We reviewed information received about your condition and circumstances. We used the Clinical Policy Bulletin (CPB): Proton Beam and Neutron Beam Radiotherapy. Based on CPB criteria and the information we have, we are denying coverage for proton beam radiotherapy. Medical studies have not proven that this procedure is effective for treatment of your condition.**

68.     On April 1, 2020, Plaintiff's treating doctor, Dr. Ahn, appealed this denial to Aetna, stating:

**In summary, proton therapy is different from other available treatment options for head and neck cancer in that it would deliver the same or improved benefit in tumor control of his [Plaintiff's] cancer that involves the skull base and nerve tracts, while sparing surrounding healthy tissues and organs including the oral cavity, mandible, and teeth, and possibly the temporal lobes. Proton therapy will provide lower cumulative doses to normal tissues compared to photon-based external beam radiation. It is noninvasive, completely outpatient-based, and extremely well tolerated. Correspondingly, we have included a comparison plan that demonstrates better tumor coverage with protons, with correspondingly decreased dose to the mandible.**

69.     On April 24, 2020, despite these compelling reasons for approving Plaintiff's request for PBRT, Aetna denied Plaintiff's pre-service appeal stating: "This decision is based on the Aetna Clinical Policy Bulletin: Proton Beam, Neutron Beam, and Carbon Ion Radiotherapy and the information we received. The member has been diagnosed with adenoid cystic carcinoma which is not a covered condition per the clinical policy bulletin."

70.     On June 8, 2020, Georgetown submitted an Aetna complaint and appeal form asking for Aetna to reconsider its denials by examining newly submitted clinical documentation submitted by Georgetown.

71.     On June 19, 2020, Aetna advised Georgetown to open a new case number to initiate Aetna's review of the new clinical documentation.

72.     On June 22, 2020, Aetna responded to this Georgetown submission with a letter from its El Paso, Texas location copying verbatim the same rationale articulated in its March 12, 2020, pre-service appeal denial:

**We reviewed information received about your condition and circumstances. We used the Clinical Policy Bulletin (CPB): Proton Beam and Neutron Beam Radiotherapy. Based on CPB criteria and the information we have, we are denying coverage for proton beam radiotherapy. Medical studies have not proven that this procedure is effective for treatment of your condition.**

73.     On the same day, Aetna sent Plaintiff a letter from its Lexington, Kentucky location informing him that "[o]ur appeal process has been exhausted. Please also be advised that we will not respond to any further requests to review our determination for the issue referenced above."

74.     On June 26, 2020, Plaintiff submitted a letter to the plan administrator, ExxonMobil Retiree Medical Plan, informing the Plan that Aetna's responses to his provider's appeals were delaying his ability to commence PBRT following his successful recovering and healing from oral surgery during the prior month.

75.     On July 27, 2020, Plaintiff's provider submitted an appeal to Aetna requesting that Aetna reverse its June 22, 2020, denial.

76.     On August 17, 2020, Plaintiff submitted an urgent member-based appeal in response to Aetna's June 22, 2020, denial.

77.     Aetna did not respond to this request despite the urgency of Plaintiff's clinical circumstances.

78.     Aetna's failure to consider Plaintiff's and his provider's appeals forced Plaintiff to proceed with PBRT treatment despite Aetna's refusal to uphold or overturn its denials.

79.     Plaintiff underwent 12 rounds of PBRT at Georgetown starting on August 18, 2020, and completed on September 1, 2020.

80.     Between September 5, 2020, and November 15, 2020, Aetna generated and sent to Plaintiff several Explanations of Benefits (EOBs) denying Plaintiff's post-service claims for PBRT primarily on the grounds that: "This is not covered. Your plan does not cover services that we find to be experimental or investigational. Or charges related to such a service."

81.     On February 2, 2021, Plaintiff submitted a post-service appeal in response to the EOB denials he received for PBRT.

82.     On March 18, 2021, Aetna upheld its denials stating:

**Based on our review of the information given and CPB "Proton Beam, Neutron Beam, and Carbon Ion Radiotherapy", we are upholding the prior denial of coverage. The basis of this determination is not meeting the criteria. Our review found a diagnosis of adenoid cystic carcinoma. Aetna considers proton beam radiotherapy experimental and**

**investigational for adenoid cystic carcinoma in adults (over age 21) because its effectiveness for these indications has not been established. Therefore, criteria are not met, and the previous denial of coverage is upheld.**

83.     In all pre-service and post-service appeals, Plaintiff and his treating providers submitted extensive medical literature and analysis showing that proton therapy results in superior outcomes and reduced long-term side effects as compared with IMRT for the treatment of adenoid cystic carcinoma.

84.     Dr. Ahn and Plaintiff's appeal submissions to Aetna make clear that the medical community has found that in Plaintiff's case PBRT is both medically necessary and a superior form of treatment, citing to numerous sources of established peer-reviewed literature proving this claim.

85.     For example, Dr. Ahn's and Plaintiff's appeal submissions cited to the following sources of established peer-reviewed literature proving the claim that PBRT is both medically necessary and a superior form of treatment for adenoid cystic carcinoma over IMRT:

- Bhattasali O, Holliday E, Kies MS, et al. *Definitive proton radiation therapy and concurrent cisplatin for unresectable head and neck adenoid cystic carcinoma: A series of 9 cases and a critical review of the literature*. HEAD NECK. 2016.

- Pommier P, Liebsch NJ, Deschler DG, et al. *Proton beam radiation therapy for skull base adenoid cystic carcinoma*. ARCH OTOLARYNGOL HEAD NECK SURG 2006; 132:1242–1249.

86.     In summary, Plaintiff's pre-service and post-service appeals to Aetna contained citations to and physical copies of peer-reviewed scientific studies finding PBRT to be both medically necessary and a superior form of treatment than established alternative treatments (like IMRT) for the treatment of adenoid cystic carcinoma.

87.      In its responses to Plaintiff's appeals, Aetna failed to reference the medical literature demonstrating the advantages of proton therapy over IMRT, just as it failed to reference any purported medical literature in its PBRT Clinical Policy Bulletin supporting its position to deny PBRT.

88.     Following the denial of benefits under the Plan, Plaintiff exhausted all administrative remedies required under ERISA.

89.     Plaintiff performed all duties and obligations on his part to be performed under his contract of insurance at all times.

**Relevant Plan Definitions**

90.     Plaintiff sought coverage for PBRT under the Plan, which includes a list of "Exclusions," which are deemed to be services that are not covered under the Plan.

91.     One such Exclusion is for services deemed "Experimental or Investigational" (the "E/I Exclusion"), where "Experimental or Investigational" is defined as:

A medical treatment or procedure, or a drug, device, or biological product, is experimental or investigational if any of the following apply:

- The drug, device, or biological product cannot be lawfully marketed without approval of the U.S. Food and Drug Administration (FDA); and, approval for marketing has not been given at the time it is

furnished; [Note: Approval means all forms of acceptance by the FDA].

- Reliable evidence shows that it is the subject of ongoing phase I, II, or III clinical trials or under study to determine its maximum tolerated dose, its toxicity, its safety, its efficacy, or its efficacy as compared with the standard means of treatment or diagnosis; or

-  Reliable evidence shows that the consensus of opinion among experts regarding the drug, device, or biological product or medical treatment or procedure, is that further studies or clinical trials are necessary to determine its maximum tolerated dose, its toxicity, its safety, its efficacy, or its efficacy as compared with the standard means of treatment or diagnosis. Reliable evidence shall mean only:

  - Peer reviewed, published reports and articles in the authoritative medical and scientific literature;

  - The written protocol or protocols used by the treating facility or the protocol(s) of another facility studying substantially the same drug, device, or biological product or medical treatment or procedure; or

  - The written informed consent used by the treating facility or by another facility studying substantially the same drug, device, or medical treatment or procedure.

92.     Radiation therapy is a procedure and therefore is not subject to FDA regulation.

93.     The accelerators and other equipment used to generate and deliver PBRT are regulated by the FDA.

94.     On February 22, 1988, the FDA approved the Proton Therapy System, and designated it as a Class II Device for radiological treatment.

95.     This classification was codified at 21 C.F.R. § 892.5050 and describes the Proton Therapy System as a "device that produces by acceleration high energy charged particles (e.g., electrons and protons) intended for use in radiation therapy."

96.     Thus, at least as of February 22, 1988, PBRT no longer fit within the E/I Exclusion to the Plan.

97.     PBRT has long been recognized as an established, medically appropriate treatment for the treatment of cancer, including adenoid cystic carcinoma.

98.     The Plan contains an exclusion for services that are not "Medically Necessary" where the Plan defines "Medically Necessary" as follows:

> Care is medically necessary if it is a therapeutic procedure, service or supply used in the medical treatment of an injury, disease, or pregnancy, which is generally recognized by the United States medical community as appropriate. Claims are reviewed as submitted, and some or all of any claim or series of services could be denied as not being medically necessary. It also means that experimental and/or investigational procedures, drugs, devices or

biological products not proven by long-term clinical studies are generally not covered.

99.     The rationales articulated by Aetna in its pre-service and post-service appeal denials of Plaintiff's claims for PBRT amount to the following: "Medical studies have not proven that this procedure is effective for treatment of your condition."

100.     This rationale plainly ignores the overwhelming peer-reviewed medical literature that concludes that PBRT is safe, effective, and a superior form of treatment for adenoid cystic carcinoma.

### Aetna's Adjudication of Plaintiff's Claims for PBRT Violate State Law

101.     Virginia law as stated in Code of Virginia § 38.2-3407.14:1 expressly prohibits health benefit plans providing coverage for cancer therapy from holding PBRT to a higher standard of clinical evidence in medical policy benefit coverage than the health plan requires for coverage of any other radiation therapy treatment.

102.     Code of Virginia § 38.2-3407.14:1 defines "Proton radiation therapy" as "the advanced form of radiation therapy treatment that utilizes protons as an alternative radiation delivery method for the treatment of tumors."

103.     Code of Virginia § 38.2-3407.14:1 states that "each policy, contract, or plan issued or provided by a carrier that provides coverage for cancer therapy shall not hold proton radiation therapy to a higher standard of clinical evidence for decisions regarding coverage under the policy, contract, or plan than is applied for decisions regarding coverage of other types of radiation therapy treatment."

104.    The rationales articulated in Aetna's pre-service and post-service denials of Plaintiff's claims for PBRT are in direct violation of Virginia law.

### Aetna's PBRT Clinical Policy

105.    Aetna drafted and implemented the PBRT Clinical Policy Bulletin, which at the time Aetna applied it to Plaintiff's requests for PBRT was most recently reviewed on May 22, 2020.

106.    Aetna's PBRT Clinical Policy Bulletin was based on outdated medical evidence and ignored accepted medical peer-reviewed evidence that PBRT is safe and effective for the treatment of cancer.

107.    The unreasonableness of the PBRT Clinical Policy is illustrated by the fact that Aetna considers PBRT "experimental and investigational" for most types of cancers, including adenoid cystic carcinoma, in "adults (over age 21) . . . because its effectiveness for these indications has not been established" while on the other hand Aetna considers PBRT "medically necessary" to treat all "[m]alignancies in children (21 years of age and younger)," as well as certain listed types of tumors.

108.    Aetna's PBRT Clinical Policy Bulletin does not consider PBRT "experimental and investigational" when treating children (21 years of age and younger) and approves PBRT for these patients.

109.    There are no medical studies that support a conclusion that PBRT would be a proven, safe, and effective treatment for the same cancer in one age group but not the other.

110.   Aetna employs the PBRT Clinical Policy Bulletin as part of its prior authorization review and adjudication of members and beneficiaries' claims to deny claims for coverage of PBRT as "experimental or investigational" or not "medically necessary" without ever engaging in any reasonable review of clinical records prior to rendering the determination of coverage.

111.   Aetna drafts, adopts, and implements its PBRT Clinical Policy Bulletin—as it did here with respect to Plaintiff's requests and claims for PBRT—by relying upon outdated medical evidence, by ignoring contemporary medical evidence, and by taking a coverage position that plainly contradicts the standard of care in the medical community.

112.   Aetna's application of its PBRT Clinical Policy Bulletin to Plaintiff's requests and claims for PBRT is an improper substitute to Aetna's legal obligation to conduct an adequate, full, and fair review of member-submitted clinical records like Plaintiff's.

113.   Aetna did not provide Plaintiff with a full and fair review of his clinical records by appropriate medical directors (who have experience or training in the context of radiation oncology or who are board certified in the requisite medical specialty) prior to rendering its coverage determinations.

114.   It is readily apparent that at no point during the claims and appeals processes that Aetna's medical reviewers considered any of the factors specific to Plaintiff's diagnosis but rather applied its blanket policy of denying proton therapy for adenoid cystic carcinoma.

115.    It is also apparent that Aetna never addressed how its PBRT Clinical Policy Bulletin, with its outdated references, could possibly have reasonably provided a fair snapshot of whether PBRT was considered experimental/investigational in 2020, which is the relevant time period related to Plaintiff's requests for PBRT.

116.    Aetna's reliance on its PBRT Clinical Policy Bulletin is merely a way for Aetna to categorically deny prior authorization requests and claims for reimbursement for PBRT to treat most cancers, including adenoid cystic carcinoma.

## FIRST CAUSE OF ACTION
## FOR DENIAL OF PLAN BENEFITS UNDER ERISA

117.    Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

118.    Plaintiff was covered under the Plan at all relevant times.

119.    Plaintiff requested and performed treatment was covered under the Plan as it was medically necessary, constituted appropriate medical treatment, and was not experimental, investigational, or unproven.

120.    Defendants wrongfully denied Plaintiff's claim for PBRT in the following respects:

(a)    Wrongfully concluding PBRT was excluded as experimental or investigational, or not medically necessary, when in fact PBRT is a mainstream treatment which has been performed by reputable physicians for decades;

(b)    Failure to provide prompt and reasonable explanations of the bases relied on under the terms of the plan documents, in relation to the applicable facts and plan provisions, for the denial of Plaintiff's requests;

(c)    After Plaintiff's claims were denied in whole or in part, failure to adequately describe to Plaintiff any additional material or information necessary for Plaintiff to perfect his claim along with an explanation of why such material is or was necessary;

(d)    Failure to properly and adequately investigate the merits of Plaintiff's request and/or consider the information provided by Plaintiff; and

(e)    Failure to consider the overwhelming medical evidence which showed that the requested treatment was medically necessary, safe, effective, and not investigational.

121.    Plaintiff is prepared to amend to allege, if he confirms in the discovery process, that Defendants wrongfully denied the claim for benefits by other acts or omissions not articulated here.

122.    Following the denial of the claims for benefits under the Plan, Plaintiff exhausted all administrative remedies required under ERISA, and performed all duties and obligations on his part to be performed.

123.    As a proximate result of the denial of benefits due Plaintiff, Plaintiff has been irreparably damaged.

124.    Plaintiff has been denied medically necessary treatment and was forced to pay a substantial sum of money out-of-pocket to proceed with his treatment.

125.    As a further direct and proximate result of this improper determination regarding the medical claims, Plaintiff, in pursuing this action, has been required to incur attorneys' costs and fees.

126.    Pursuant to 29 U.S.C. § 1132(g)(1), Plaintiff is entitled to have such attorneys' fees and costs paid by Defendants.

127.    Due to the wrongful conduct of Defendants, Plaintiff is entitled to enforce his rights under the terms of the Plan and to clarify his rights to future benefits under the terms of the Plan.

## SECOND CAUSE OF ACTION
## FOR EQUITABLE RELIEF

128.    Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

129.    As a direct and proximate result of the failure of the Defendants to pay claims for benefits, and the resulting injuries and damages sustained by Plaintiff as alleged herein, Plaintiff is entitled to and hereby requests that this Court grant Plaintiff the following relief pursuant to 29 U.S.C. § 1132(a)(1)(B):

(a)    Restitution of all past benefits due to Plaintiff, plus prejudgment and post-judgment interest at the lawful rate; and

(b)    To clarify Plaintiff's rights to future benefits under the terms of the Plan;

(c)    Such other and further relief as the Court deems necessary and proper to protect the interests of Plaintiff under the Plan.

## Request for Relief

Wherefore, Plaintiff prays for judgment against Defendants as follows:

1.    Payment of health benefits due to Plaintiff under the Plan;

2.    Pursuant to 29 U.S.C. § 1132(g), payment of all costs and attorneys' fees incurred in pursuing this action;

3.    Payment of prejudgment and post-judgment interest as allowed for under ERISA;

4.      To clarify Plaintiff's rights to future benefits under the terms of the Plan; and

5.      For such other and further relief as the Court deems just and proper.

Dated: March 7, 2022                    Respectfully submitted,

                                        GARY GREEN

                                        _____/s/ *Mikhael D. Charnoff*_____
                                        Mikhael D. Charnoff, VSB No. 43929
                                        PERRY CHARNOFF PLLC
                                        1010 N. Glebe Road, Suite 310
                                        Arlington, VA 22201
                                        Tel: 703-291-6650
                                        Fax: 703-563-6692
                                        mike@perrycharnoff.com